Deaderick, J.,
delivered the opinion of the court.
Complainant filed his bill in the Chancery Court at Knoxville, setting forth that he holds a note on Samuel H. Davis and ~W. P. Elliott, partners under the firm name of Samuel H. Davis & Go., executed by said firm on the 12th of March, 1870, payable to the order of R. M. McClung, sixty days after date, and by him endorsed at the date of its execution.
It is alleged in the bill that this note was given in a renewal of a note for same amount, for loaned money, executed by said McClung and endorsed by said Samuel H. Davis & Co.; that the substitution of Davis & Co. as payors in the note sued on, for McClung, was made at his instance, for the purpose of giving him recourse on Davis & Co. if he should have the note to pay, and would not, as stated by McClung, change his liability.
It is further alleged in the bill, that shortly before said last mentioned note fell due, respondent *111 McClung, asked complainant if Davis & Co. had made any move towards paying the note, and on being informed that they had not, replied that he would stand good for the claim.
These allegations are denied in the answer of Me-Clung, and are not sustained by the proof.
Davis & Elliott failed to answer, and judgments pro oonfesso are regularly entered against them.
The bill further alleges, that about the 13th of June, 1870, Davis & Co. became utterly and publicly insolvent, and soon ' thereafter complainant met Mc-Clung and asked him if Davis & Co. had secured him on account of his said liability, to- which he replied that “he knew Davis would not let him suffer, and that complainant could not be affected by the action of Davis & Co. in the matter, as he (McClung) would certainly stand good for its payment”; that soon after this he received a message by a friend from McClung, saying he might, feel easy about the claim as he, McClung, would certainly pay it. But since that, on his application to McClung to pay it or execute his note for the claim, he has refused, and claims that he is not legally bound to pay the same for want of demand and notice. Complainant prays for a decree for the amount of the note, etc.
Respondent McClung submits to the jurisdiction of the Chancery Court, and answers, admitting the execution of the note by Davis & Co. and his endorsement thereof, but denies that he ever had any conversation with -complainant about the renewal of the original note, and denies that he agreed to be bound *112 upon the new note otherwise than as endorser; that he received none of the proceeds of said notes; that he well understood the extent of his liability as endorser, and claims that he is not liable to pay said note for want of demand and notice of protest. He denies that, shortly before the maturity of the note sued on, he said “ he would stand good for the claim,” but admits that he told complainant that he would “ stand again ” for Davis & Co., in answer to complainant’s question, — meaning that he would endorse for them again if the note was not paid at maturity; that he did not know, until after the failure of Davis & Co., that the note was not paid. Respondent states that soon after the failure of Davis & Co., which occurred about the 13th June, 1870, complainant met him and asked him about said claim, but denies that he stated to complainant that he would not be affected by the failure of Davis & Co., and that he, respondent, would certainly stand good for the payment of the claim. Respondent states that he told complainant, on the occasion referred to, that he would see that complainant lost nothing, provided he would not sue or otherwise annoy respondent, and that he (respondent) was not liable for the claim because of complainant’s failure to give him notice of the non-payment; and he further sent complainant word, and told him in person, that he would see the claim paid provided he would let him alone about it.
The foregoing present the substantial issues made by the bill and answer, both of which are sworn to.
The bill in this case being one which the law *113 does not require the complainant to swear to, and the defendant being required to answer its allegations on oath, the familiar principle applies, that, to authorize a decree for complainant, the bill must be supported by two witnesses, or by one witness and corroborating circumstances.
The liability of respondent as an endorser could only be fixed by demand and protest of the note and notice of non-payment. This is a rule of law established for the benefit of endorsers, and must be complied with to fix their liability, unless it has been distinctly and understandingly waived.
In 1 Parsons on N. and B., top p. 595, it is said, “although there is great fluctuation and uncertainty in the cases connected with this subject, yet the general principle seems now to be settled, in this country at least, and the earlier decisions in England, that where no demand has been made or notice given, a promise to pay, after maturity, made with full knowledge of laches, is binding on the party promising, and removes entirely the effect of any negligence in making the demand or in giving the notice.”
There should, however, be clear and distinct evidence of the promise.
When the endorser of a note said to plaintiff’s agent that “in a few days he would see the agent and arrange the note ”; when the endorser said, “when he returned he would set matters to rights”; and “an acknowledgment of the debt, with a promise to send funds to take up a bill,” and “a request for delay and promise to pay in a few days,” are cases, *114 with others given by the learned author, in which the promise was sufficiently made out. Ib., 596-7.
So also in Edwards on Bills and Notes, p. 611, it is stated “that on proof of a promise to pay by an endorser, with knowledge that he was not liable on the bill, the holder may recover, — not upon the •ground that the endorser is bound by the promise as a matter of contract, for it wants consideration, but on the ground that a promise amounts to a waiver •of the objection that the proper steps have not been taken to charge the endorser.”
If, after the dishonor of a bill, the ■ drawer distinctly promises to pay, that is evidence from which it may be inferred he has received notice of the dishonor. Ib., 612 top, 652 marg.
Admitted laches can only be waived by an unequivocal and direct promise to pay, made with full knowledge of the facts and circumstances, or by conduct and language which are equivalent to a direct promise. Ib., 614.
In 5 Yerg., 300, the court charged the jury, “if the endorser had promised to pay the no.te with knowledge that no demand was made of maker and no notice given to the endorser, they should find for the plaintiff.”
This court held the charge correct, saying “the express promise to "pay is sufficient to dispense with proof of notice.”
In 2 Hum., 561, Judge Turley says: “The law is, that a neglect to give notice of the non-payment of a bill or note may be waived by the person' en *115 titled to take advantage of it; that the payment of a part, or promise to pay, or anything equivalent thereto, made by a person after a knowledge of the laches, amounts to a waiver of the consequence and admits the right of action. The effect of the promise to pay has been held to be not merely a waiver of the right to object to the laches, but to be an admission that the bill or note had been regularly presented and dishonored, and that due notice had been given.” Citing Chitty on Bills, 533.
The learned judge then concludes by declaring: “If a man, as drawer or endorser of a note or bill of exchange, with the knowledge that proper steps have not been taken to charge him, promise to pay, he is bound thereby, and may be declared against as a drawer or endorser, whose liability has been legally fixed, because the promise is held to be an admission that the requisites of the law' have been complied with, which he will not be permitted afterwards to controvert. But if he promise to pay without a knowledge of the facts which discharge him, he is not bound thereby, and may make his defense.”
In the case of Spurlock v. The Union Bank, 4 Hum., 336, Spurlock was sued as an endorser of a bill which was dishonored, but of which he had no notice. He paid $140 on the bill, and admitted his liability to pay it.
Judge Turley says the law is well settled by our courts and by foreign courts: “ Let it suffice that it is held that if an endorser, with full and complete knowledge of his discharge, promise to pay, he shall *116 be held to his promise. Bat this shall not be done if the promise be made under a mistake or misapprehension of the facts, or as to the law of his liability upon them.” No express promise to pay is proved,, nor does it appear that Spurlock had knowledge that he was not liable on the bill. For this latter reason the judgment against Spurlock was reversed.
This case does not hold that an acknowledgment of the liability and promise to pay, with knowledge of discharge, are necessary, but distinctly reaffirms the doctrine of former cases, — that the promise alone, with knowledge, etc., operates as a waiver. But the acknowledgment is treated in the opinion as equivalent to the promise to pay.
The cases in Tennessee may be thus far considered as uniform in holding that a promise to pay,, with full knowledge of his discharge, will bind an endorser, not upon the ground that the promise is a new contract based upon the old consideration, but because the promise is held to be an admission that the bill or note had been regularly presented and dishonored, and that due notice thereof had been given. Other authorities hold the promise binding on the ground that the original debt is a sufficient consideration to sustain it: 3 Kent, 113, note a. Nor is it, intimated in any of the cases which have been herein before cited of our own courts, nor in Parsons or Edwards on Bills and Notes, that in addition to the promise of the endorser there should be proof of an express admission of liability on the bill, in order to hold the endorser liable.
*117 The question again came before this court in a case reported in 2 Head, 58, of The Union Bank v. Golladay, Cheatham & Co., as drawers of a bill of exchange. The defense was, failure of notice of demand and refusal to pay. One of the firm wrote a letter to the bank, acknowledging their indebtedness and promising to pay. The court charged the jury, that if they believed the letter applied to the debt sued on, it would be a waiver of notice, and a promise tó pay the debt notwithstanding there had been no notice; that, although the letter specified no particular debt as being due from defendants to plaintiff, in the absence of proof of the existence of any other debt, it might be presumed to apply to this debt. Judge Caruthers, in delivering the opinion of this ■court, said that the charge of the Circuit Judge was “right throughout, with the exception of the important qualification that an acknowledgment of the debt and promise to pay it, in order to amount to a waiver of demand or notice, must be made with a knowledge of his discharge at the time.” Citing Ad. on Con., 998; 3 Kent, 113; 4 Hum., 336. And adds that the full knowledge of his discharge is indispensable to the binding effect of such a promise.
It has already been shown that the case in 4 Hum. does not require that there should be a promise and acknowledgment both. On' the contrary, in that case there was no proof of a promise to pay, but proof of an admission or acknowledgment of his liability, which the learned judge delivering the opinion assumes to be, and treats as equivalent to, a *118 promise to pay. Judge Turley had previously held that a payment of part, or promise to pay, or anything equivalent thereto, after knowledge of laches, amounts to a waiver. 2 Hum., 561.
Nor does the authority in 3 Kent, 113, support the proposition that both the acknowledgment of liability and promise to pay, with knowledge, etc., are necessary to constitute a waiver; but states that the-promise to pay, with knowledge of discharge, will bind the party making the admission.
While, therefore, in the case in 2 Head there was-both an acknowledgment and promise, it is not. held that both are necessary, there being no question made upon such necessity, but the point in judgment was-that the court had omitted to say, “ if the defendant had full knowledge of his discharge,” and for this omission the case was reversed; and the authorities-cited by the learned judge do not warrant the construction sought to be placed upon his opinion. It does not hold, and did not intend to adjudicate, that both acknowledgment of liability and promise to pay were necessary to constitute a waiver.
In the case of Ford v. Dallam, 3 Col., 67, the-Circuit Judge had charged the jury that they might infer “from a subsequent promise to pay, or from a subsequent acknowledgment of liability, or from other circumstances, that defendant had due notice”; and the court refused to instruct the jury, as requested by defendant, that to constitute a waiver of notice three-things were necessary — first, an acknowledgment of liability; second, a promise to pay the debt; third, *119 it must be shown such promise' was made with a knowledge by endorser that he was discharged. His-Honor Judge Shackelford, in delivering the opinion of the court, said: “This court held in 4 Hum., 336,. that there must be an acknowledgment of the debt and a promise to pay it by the drawer or endorser, to amount to a waiver of notice, and it must be made with a knowledge of his discharge at the time. The principle was again affirmed in 2 Head, 64, and is sustained in 12 Wheat, 183.”
.We have already shown that the cases in 4 Hum. and 2 Head do not sustain the proposition of the concurrence of an acknowledgment of liability and a promise to pay; while in the case in 12 Wheat, it is declared that “it is well settled as a principle of the law merchant that an unconditional promise by the drawer or endorser of a bill to pay it, after full knowledge of all the circumstances necessary to apprise him of his discharge from his responsibility by the laches of the holder, amounts to a waiver and dispenses with proof of demand,” etc.
Although the learned judge, in the case in 3 Col., said that the circuit. judge erred in refusing the instructions asked by defendant’s counsel, yet it is obvious from the opinion, and from the authorities cited, that' the failure to show that the drawer had knowledge of his discharge when he made the promise, was the chief ground upon which the judgment was properly reversed.
Upon a careful review of the cases, we are of opinion that the sound and safe rule has been stated *120 in the cases in 2 and 4 Hum., and that it is not necessary that a formal acknowledgment of liability should be superadded to the promise to pay, to constitute a waiver of notice, when the proof shows full knowledge of discharge at the time the promise or acknowledgment is made by the drawer or endorser.
The next inquiry is, whether there has been such promise or acknowledgment by defendant McClung as to charge him with the debt sued on.
That he knew he was discharged of liability on the note, there can be no doubt.
Newton Bogart, the complainant, is examined as a witness, and, amongst other things, states that a few days after the failure of Davis & Co. he met Mc-Clung, who said to him that his interest could not be affected by Davis & Co.’s action, as he (McClung) was bound to him (Bogart) for the note, and he would certainly pay it. McClung also stated that he would take no advantage of the failure to give notice of non-payment by Davis & Co.
Joseph Jaques was also examined as a witness, and stated that shortly after the failure of Davis & Co. he met McClung, and had a conversation with him about the debt spoken of. McClung told him to say to Bogart that he would pay the debt, to make himself perfectly easy about it, that he would pay it, and all he asked of him was to hold still.
Here we have the testimony of two witnesses to the promise of McClung to pay the debt. We do not think that the remark of McClung, that all he asked was that Bogart should hold still, was a eon- *121 dition upon the performance of which McClung agreed to pay the debt. Eor do we think that it is essential that two witnesses should testify to the same conversation ; but it is enough to satisfy the rule of chancery that the testimony of two witnesses is required to overturn the denial of the answer, that two witnesses should testify to a fact or facts to be established, whether their knowledge of such fact or facts be acquired at the same time or at different times.
The fact to be established in this case is the promise to pay, and this fact is testified to by two witnesses, and, without the aid of other testimony in the cause, is, under well established principles, sufficient to overturn the denial in the answer.
The result is, that the decree of the Chancellor will be affirmed.